Steven GRIMES *v.* NORTH AMERICAN FOUNDRY

93-722                                              872 S.W.2d 59

Supreme Court of Arkansas
Opinion delivered March 21, 1994

*Walker Law Firm*, by: *Eddie H. Walker, Jr.,* for appellant.

*Davis, Cox & Wright*, by: *Paul H. Taylor*, for appellee.

STEELE HAYS, Justice. This is a Workers' Compensation case. Claimant/appellant is Steven Grimes. Respondents/appellees are North American Foundry and its carrier. Grimes sustained a compensable injury to his back on August 20, 1987. He received temporary total disability for three months and returned to his employment at the foundry on November 23. Fifteen months later he was laid off along with other employees.

An administrative law judge determined that Grimes had sustained a seventeen percent permanent partial disability, seven percent of which was attributable to an impairment rating and ten

percent due to wage loss. Both parties appealed to the Commission, which remanded the case to the administrative law judge to determine whether Grimes was laid off as a result of his injury or for economic reasons.

The administrative law judge reinstated his previous award, at the same time finding that Grimes was laid off for economic reasons. North American Foundry appealed and the Commission, with one dissenting member, agreed with the seven percent anatomical impairment rating but held that Grimes had not suffered a loss in wage earning capacity attributable to his injury.

On appeal to the Court of Appeals, Grimes assigned three errors to the Commission: it erred in remanding the case to the administrative law judge for additional evidence, erred in denying benefits in excess of seven percent and erred in the interpretation of Ark. Code Ann. § 11-9-522 (1987). By a vote of three to three the Court of Appeals affirmed the Commission and, because of the tie vote, we granted Grimes's petition to review the decision of the Court of Appeals. We now affirm the Commission.

I

Citing *Gencorp Polymer Products* v. *Landers*, 36 Ark. App. 190, 820 S.W.2d 475 (1991) and Ark. Code Ann. § 11-9-705(c)(1)(1987), Grimes argues the Commission abused its discretion in initially remanding the case to the administrative law judge for additional evidence when no request for a hearing for the introduction of additional evidence had been filed by either party. Grimes maintains the remand gave the appellee/respondent a second chance to present sufficient evidence to carry its burden of proof. Appellee points out in response that it was Grimes who benefitted from the remand because the burden of proof at that hearing rested on the claimant, not on the appellee.

In its ensuing opinion the Commission explained why the remand was warranted:

> It appears that the significance of why we remanded this case may have been lost. The issue is whether the claimant has met his burden of proving by a preponderance of the evidence that he has suffered a loss in wage earning capacity. The question of whether claimant is laid off for economic reasons or as a result of his compensable injury

is extremely relevant in determining whether the claimant has met his burden of proof.

* * * *

Further, this is a very important factor because if the claimant had not been laid off for economic reasons, he would still be earning the same wages or greater wages than those he was earning at the time of the accident. This indicates that the claimant's *earning capacity* has not been diminished, as a result of his injury, but that he was simply laid off along with other employees of the company for economic reasons. While the claimant is currently working for D & N Machine making $5.25 or $5.50 per hour as opposed to $6.15 per hour he was earning when he was laid off, the claimant has offered insufficient proof that he took a lesser paying job because of his compensable injury.

Section 11-9-705(c)(1) provides that each party shall present all oral or documentary evidence at the initial hearing. It also provides that further hearings for additional evidence "will be granted only at the discretion of the hearing officer or the Commission." The statute also provides that a request for a hearing must show the substance of the evidence to be presented.

Undoubtedly this section was intended to inhibit piece-meal proceedings in workers' compensation cases, but without foreclosing the Commission's discretion to order additional hearings when appropriate. As it is clear from the statute that the Commission has the authority to do what was done in this case, the only question is, was it an abuse of discretion? Since there were sound reasons for the remand and it inured no less to the benefit of the claimant than to the respondent, we cannot say the Commission's discretion was abused.

Nor do we read the *Gencorp* case as mandating a reversal of the Commission's order of remand. The administrative law judge in *Gencorp* had "reserved for future determination" claimant's entitlement to temporary total disability and the Commission affirmed and adopted that ruling. Reversing, the Court of Appeals observed that it is the duty of the Commission to translate the evidence on all issues into findings of fact [*Sanyo Manufacturing Corporation* v. *Leisure*, 12 Ark. App. 274, 675 S.W.2d 841 (1984)],

whereas, reserving a material issue for future determination was not a finding of fact, but a declination to find a fact. Granted, the opinion takes note of § 11-9-705(c)(1), requiring that all evidence be presented at the initial hearing and that the claimant had been allowed "a second bite at the apple." However, the greater emphasis, we believe, was placed on the failure to make the finding of fact, as opposed to the order of remand, as evidenced by the comment:

> "disregarding its duty to find the facts in order to give the appellee [claimant] the benefit of the doubt is not within the Commission's authority," citing *Allen Canning Co.* v. *McReynolds*, 5 Ark. App. 78, 632 S.W.2d 450 (1982).

*Gencorp, supra*, at 195.

The intimations of that opinion, as we read it, are that the reversible error lay in the failure of the administrative law judge and the Commission to make an essential finding of fact and the reference to § 11-9-705(c)(1) was merely surplusage. Whether that is an accurate reading of *Gencorp* we leave to the Court of Appeals. It is enough to note that § 11-9-705(c)(1) specifically contemplates that while all evidence is to be offered at the initial hearing, the Commission and the administrative law judge have the discretionary power to permit the introduction of additional evidence. We cannot say the Commission exceeded the authority given it under the statute by ordering additional evidence in this instance.

## II

Second, Grimes submits the Commission erred in denying disability benefits in excess of seven percent to the body as a whole. Steven Grimes is a thirty-six year old high school graduate with a long and productive record of employment. Prior to his injury Grimes had obtained 140 hours of community college training in machine shop, carpentry and automotive repair. He had no problems before but can no longer do carpentry or automotive work because of his injuries. Before being hired by the foundry Grimes worked for ten years for Whirlpool. At the time of his termination by the foundry Grimes was earning $6.15 per hour. As a machine operator he pushed large sand molds weighing eighty pounds or so and was on his feet all day.

Grimes suffered a herniated disc when he slipped and fell climbing onto a conveyer. He underwent a CAT scan which revealed a moderate bulging of the disc in the lumbar spine. An MRI showed a herniated disc, L5-S1, which was treated conservatively. On May 18, 1988, Grimes's physician described his condition as "asymptomatic at the present time." Grimes continued his employment at the foundry until he and others were terminated on February 9, 1989.

At the behest of the administrative law judge, Grimes was examined by an independent physician who diagnosed a herniated disc at the L5-S1 vertebrae level with decreased motion of the lumbar spine, but "no hard neurological symptoms other than a very mild decrease in the ability to extend the great toe which is not a functional deficit. Additional treatments, if Mr. Grimes feels this problem is too painful to live with, would be excision of the disc, and I would rate him with approximately thirteen percent total body impairment as he stands at this time."

Three or four weeks after his termination at the foundry Grimes found employment at D & N Machinery earning $4.00 an hour operating a computerized milling machine. Grimes testified his employers were aware of his condition and required no heavy lifting on his part.

In sum, Grimes submits that when his age, education, experience, physical impairment and other factors affecting his earning capacity are weighed, there is no substantial evidence on which to base an award of seven percent permanent partial disability.

Appellee cites countervailing evidence: Dr. Raby's testimony, taken on March 1, 1990, was the most recent evidence as to Grimes's condition. Dr. Raby allocated a rating of ten to thirteen percent, but he also conceded that it should be seven percent under the guidelines of the AMA. Also, the neurological examination of Dr. Reul, on January 19, 1990, contained the following:

COMMENTS: He has a completely normal neurological examination, and EMG-NCV of left lower extremities is normal. MRI scan shows no significant pathology at this point and I would feel there is no neurological basis for his complaints.

According to appellee, the "most compelling evidence" that Grimes suffered no wage loss disability is the fact that he returned to work in November 1987 at the same wage rate and continued to earn at that level until his discharge in February 1989. There was no evidence that Grimes missed any work at D & N Machining because of his back, or that standing on his feet all day posed any difficulties for him.

In determining the sufficiency of the evidence to sustain the findings of the Workers' Compensation Commission, we weigh the evidence in the light most favorable to the findings of the Commission and affirm if there is substantial evidence to support such findings. *Cummings* v. *United Motor Exchange*, 236 Ark. 735, 368 S.W.2d 82 (1963). In so doing, we recognize that it is the prerogative of the Commission to determine issues of weight and credibility. *Bankston* v. *Prime West Corporation*, 271 Ark. App. 727, 610 S.W.2d 586 (1981). Beginning with *Glass* v. *Edens*, 233 Ark. 786, 346 S.W.2d 685 (1961), the wage loss factor is defined, in contradistinction to the functional or anatomical loss, as the extent to which a compensable injury has affected the claimant's ability to earn a livelihood. *Rooney & Travelers Insurance Co.* v. *Charles*, 262 Ark. 695, 560 S.W.2d 797 (1978). Attendant factors include medical evidence, age, education, experience and other circumstances reasonably related to a claimant's earning power. *Perry* v. *Mar-Bax Shirt Co.*, 16 Ark. App. 133, 698 S.W.2d 302 (1985).

While there was evidence of substance in this record to support a finding greater than the rating awarded, we cannot say the finding of the Commission of seven percent of the body as a whole is not supported by substantial evidence.

### III

The final point involves a procedural discrepancy which we think is effectually resolved by our disposition of the first point. Grimes asks us to hold the Commission erred in its interpretation of Ark. Code Ann. § 11-9-522(b) (1987). A part of that provision purports to disentitle an employee to benefits in excess of the percentage of permanent physical impairment so long as he or she has returned to work, or had a bona fide offer of work, at the same wage level.

On remand the administrative law judge, though reinstating

his original award of seven percent and ten percent, made a finding that Grimes was laid off from North American Foundry for economic reasons. When that opinion was appealed by the employer there was no cross-appeal by Grimes, prompting the Commission to declare the finding to be *res judicata.*

■ Grimes relies on *White* v. *Air Systems, Inc.*, 33 Ark. App. 56, 800 S.W.2d 726 (1990), as support for the premise that *res judicata* applies only to final orders and a timely appeal to the Commission from an administrative law judge by either side prevents such order from becoming final. Assuming, without deciding, that to be a correct interpretation of *White*, we do not read the Commission's opinion as relying on § 11-9-622(b) in denying wage loss benefits. Rather, it is evident the Commission relied on a variety of factors, including those mentioned under Point I, in rendering its opinion.

For the reasons stated, the order appealed from is affirmed.

DUDLEY and GLAZE, JJ., dissent.

TOM GLAZE, Justice, dissenting. I must disagree with the majority opinion. The administrative law judge fully tried Steven Grimes' claim, and on July 11, 1990, the judge found Grimes' anatomical impairment was seven percent and his loss in wage earning capacity to be ten percent. That decision was appealed to the Commission. On February 5, 1991, the Commission affirmed the judge's anatomical finding, but vacated the loss in earning capacity determination and instructed the judge to take additional evidence, particularly as to whether Grimes had been laid off by North American for economic reasons. In my view, the Commission's ruling to remand was an abuse of discretion.

The Commission justified its remand based on the premise that Grimes had failed to meet his burden of showing that he suffered a loss of earning capacity. Such is not the case.

Grimes' proof showed he suffered a moderately large disc herniation at the L5 S1 level, and experienced intermittent pain in his lower back and left extremity.[1] An independent examination

---

[1]Apparently this herniated disc problem changed to a bulging disc which was further described as disc degeneration. Grimes was also diagnosed as having structural damage to his disc.

by Dr. Steven Heim caused him to opine that Grimes suffered a thirteen percent impairment to the body as a whole. Physicians cautioned that Grimes should avoid bending, stooping and excessive lifting. Based on these and other findings and the fact that Grimes' subsequent or new employment paid over two dollars less than he had received at North American, the judge appropriately awarded a ten percent loss in earning capacity.

Although the administrative law judge's findings appear to amply support the ratings and award given Grimes, the Commission on appeal raised the issue as to whether Grimes had been laid off for economic reasons or as a result of his compensable injury. In its written opinion, the Commission explained that North American's reason for laying off Grimes was extremely relevant when determining whether he met his burden of proof as to the wage-loss issue. In my view, the Commission apparently failed to review the evidence presented to the administrative law judge on this very issue when the judge made his initial decision.

In this respect, Grimes testified that one of his physicians had told him to ask North American's personnel manager if Grimes could stop climbing to the top of the sand silo. He was allowed to stop this job responsibility, and this seemed to help his back. However, two weeks later, Grimes was laid off work, as were others at the company. He said that employees with less seniority than he, but who had no injuries, were kept on the job. Grimes related that he was never recalled to work even though he knew North American hired other people through a temporary service. He testified that, after North American terminated him, he applied for other employment, but on each occasion, he was asked if he had back problems, and he revealed that he did. None of these potential employers expressed an interest in hiring Grimes. A small business employer did eventually hire Grimes (at lower wages), but he did so without asking Grimes whether he had any prior back injury.

Obviously, the foregoing evidence was circumstantial but sufficient to support the administrative law judge's ten percent wage-loss ruling. Of course, the judge (or the Commission) could have just as easily disbelieved Grimes' assertion that he was terminated because of his injury, but Grimes' credibility has never been the issue. Significantly, North American made no attempt

to rebut Grimes' proof on the earning capacity issue, but the Commission absolved North American of its failure in this respect by finding the layoff/wage-loss issue "had not been contemplated" by the parties. The Commission, however, offered no explanation for such a supposition, and the record clearly fails to support it.

As previously discussed, Grimes certainly addressed the lay off/loss of earning capacity issue at the initial hearing. And North American was well aware (or should have been) that this wage-loss issue would be considered by the law judge since it is a factor set out and required to be addressed under Ark. Code Ann. § 11-9-522(b) (Supp. 1993). That specific provision provides as follows:

> "[S]o long as an employee, subsequent to his injury, has returned to work, has obtained other employment, or has a bona fide and reasonably obtainable offer to be employed at wages equal or greater than his average weekly wage at the time of the accident, he shall not be entitled to permanent partial disability benefits in excess of the percentage of permanent physical impairment established by a preponderance of the medical testimony and evidence."

Here, Grimes met his burden under § 11-9-522(b), and while it had the opportunity to rebut Grimes' proof at the initial hearing, North American simply failed to do so. The Commission gave North American a second opportunity to rebut Grimes' evidence even though the court of appeals has forbidden such a "second bite at the apple" by its holding in *Gencorp Polymer Products* v. *Landers*, 36 Ark. App. 190, 830 S.W.2d 475 (1991). No one suggests the *Landers* decision should be overturned.

For the foregoing reasons, I would reverse the Commission's decision with directions to reinstate the loss in earning capacity benefit awarded Grimes by the administrative law judge.

DUDLEY, J., joins this opinion.