2009 Ark. App. 223

**SEA ARK MARINE, INC. and AIG Claim Services, Inc., Appellants,**

v.

**Jerry PIPPINGER, Appellee.**

**No. CA 08–776.**

Court of Appeals of Arkansas.

April 1, 2009.

Worley, Wood & Parrish, P.A., by: Jarrod S. Parrish, Little Rock, for appellants.

Kenneth E. Buckner, Pine Bluff, for appellee.

ROBERT J. GLADWIN, Judge.

This appeal follows the May 13, 2008 decision of the Workers' Compensation Commission (Commission) affirming and adopting the February 14, 2008 opinion of the Administrative Law Judge (ALJ), finding that appellee was entitled to the implantation of the dorsal-column stimulator if additional testing and examination showed it to be necessary. On appeal, appellants argue that the Commission failed to hold appellee to his statutory burden of proof by awarding additional medical care while simultaneously opining

that he needed to return to the doctor for further evaluation before that care could be deemed reasonable and necessary. We agree and reverse and remand.

Appellee, age sixty-two, injured his left foot and ankle on May 1, 2004, after becoming entangled in some hoses and falling from a large boat at the SeaArk Marine production facility. Appellee was diagnosed with a comminuted and compressed fracture of the left calcaneus bone. Orthopedic surgeon Dr. John Lytle performed surgery with external fixation (plates & screws) on May 26, 2004, but appellee developed reflex-sympathetic dystrophy (RSD) of the left-lower extremity.

In his report of September 2, 2004, Dr. Lytle noted evidence of RSD with atrophy, red glow, and shiny skin. A report dated September 9, 2004, reflected symptoms of atrophy, change in hair pattern, hyperhidrosis, and temperature changes. A recommendation was made for confirmation with diagnostic studies. On September 13, 2004, a laser-doppler study was performed, which was negative, but a triple-phase-bone scan was positive and an EMG/NCV study was abnormal. Appellee received treatment to desensitize the scar. Physical therapy improved, but did not eliminate, his pain.

Appellee began treatment with Dr. William Ackerman for continuing pain and RSD in September 2004. Dr. Ackerman also ordered physical therapy, which appellee completed with Nat Grubbs. Based on his reports of September 13, 2004, and October 28, 2004, Dr. Ackerman determined there had been a resolution of the RSD, and he released appellee from his care. However, Dr. Ackerman wanted appellee to see a foot and ankle surgeon for the removal of the hardware, and on November 29, 2004, appellee returned due to pain and explained to Dr. Ackerman that he was "unable to see Dr. Thomas, the chief of foot surgery at UAMS," because he had seen a "surgeon picked by the workers' compensation." That surgeon was Dr. Larry Nguyen, and he first examined appellee on November 19, 2004. Dr. Nguyen continued appellee's physical therapy into December 2004.

On February 15, 2005, Dr. Nguyen surgically removed the hardware previously implanted by Dr. Lytle. The second surgery did not improve appellee's RSD symptoms but did improve the pain. During surgery, Dr. Nguyen clipped, or freed, a nerve trapped in scar tissue (a sural-nerve resection), which had left the side of appellee's foot numb. On March 30, 2005, Dr. Nguyen released appellee and rated appellee's impairment at twenty-one percent to the lower extremity, stating that maximum-medical improvement from the orthopedic standpoint had been reached. He warned, however, that appellee would require additional surgery, fusion with allograft, sometime in the future.

Before he closed his local practice and relocated out of the state, Dr. Ackerman saw appellee for the last time on June 14, 2005, and indicated that the regional-pain syndrome had resolved, but that appellee would be entitled to an impairment rating possibly based on his RSD. Dr. Ackerman recommended a laser-doppler study to determine whether appellee had additional symptoms of RSD, but that test was not approved by appellant AIG Claim Services, Inc., (Carrier). On November 16, 2005, Dr. Nguyen suggested a referral to Dr. Mahmood Ahmad, so that he could take over where appellee's treatment with Dr. Ackerman had ended.

Carrier agreed to send appellee to Dr. Ahmad for an initial visit to evaluate his RSD. Appellee was seen by Dr. Ahmad on August 4, 2006; however, Carrier did not approve anything beyond the first doctor's visit. Dr. Ahmad authored a letter dated

June 27, 2007, indicating that while RSD can wax and wane, it cannot be cured. He opined that appellee needed additional pain treatment and was a candidate for a spinal-cord-stimulator trial. Appellee then saw Dr. Whipple on August 21, 2007. Dr. Whipple also recommended additional diagnostic testing (an MRI scan), which Carrier to date has not authorized. Dr. Whipple noted coolness in appellee's left foot and his restricted range of motion. Appellee complained of pain in his foot and back at that time.

Medical expenses, temporary-total-disability benefits, and the twenty-one-percent impairment rating, assessed by Dr. Larry Nguyen in his report of March 30, 2005, were accepted. Additionally, appellee receives social-security-disability benefits.

A hearing was conducted on November 16, 2007, before ALJ Elizabeth W. Hogan, to determine appellee's entitlement to payment of additional medical expenses and attorney's fees. At issue was whether or not additional medical treatment is reasonable and necessary pursuant to Arkansas Code Annotated section 11–9–508 (Supp. 2007). In her opinion dated February 14, 2008, the ALJ noted that she found appellee to be a credible witness who has cooperated with his physicians and treatment. She found that he is entitled to continuing medical treatment with Dr. Ahmad and, if ultimately Dr. Ahmad needs to implant a stimulator, that would be a reasonable and necessary medical expense. She noted Dr. Ackerman's diagnosis of "complex regional pain syndrome," formerly known as RSD, after diagnostic testing and noted that there was no evidence presented that appellee is malingering. The ALJ also noted Dr. Ahmad's opinion that, although appellee's pain syndrome may wax and wane, it cannot be cured. She determined that appellee will need follow-up pain management for the rest of his life. The ALJ made a specific finding that, because Dr. Ahmad did not have all of appellee's medical records at the time of the initial evaluation, Dr. Ahmad needs to reevaluate appellee before proceeding; but she noted that a stimulator implant is the preferred course of treatment. She specifically found that this pain-management treatment is reasonable and necessary to address pain and to stop the syndrome from progressing.

Appellants filed a timely notice of appeal to the Commission on February 27, 2008, and on May 13, 2008, the Commission affirmed and adopted the decision of the ALJ. Timely notice of appeal was filed on June 12, 2008, and this appeal followed.

Typically, on appeal to this court, we review only the decision of the Commission, not that of the ALJ. *Daniels v. Affiliated Foods Sw.*, 70 Ark.App. 319, 17 S.W.3d 817 (2000). In this case, the Commission affirmed and adopted the ALJ's opinion as its own, which it is permitted to do under Arkansas law. *See Death & Perm. Total Disab. Trust Fund v. Branum*, 82 Ark.App. 338, 107 S.W.3d 876 (2003). Moreover, in so doing, the Commission makes the ALJ's findings and conclusions the findings and conclusions of the Commission. *Id.* Therefore, for purposes of our review, we consider both the ALJ's order and the Commission's majority order.

In appeals involving claims for workers' compensation, this court views the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's decision and affirms the decision if it is supported by substantial evidence. *See Kimbell v. Ass'n of Rehab Indus. & Bus. Companion Prop. & Cas.*, 366 Ark. 297, 235 S.W.3d 499 (2006). Substantial evidence is evidence that a reasonable mind might accept as adequate to

support a conclusion. *Id.* The issue is not whether the appellate court might have reached a different result from the Commission; if reasonable minds could reach the result found by the Commission, the appellate court must affirm the decision. *Id.* We will not reverse the Commission's decision unless we are convinced that fair-minded persons with the same facts before them could not have reached the conclusions arrived at by the Commission. *Dorris v. Townsends of Ark., Inc.,* 93 Ark.App. 208, 218 S.W.3d 351 (2005).

Questions concerning the credibility of witnesses and the weight to be given to their testimony are within the exclusive province of the Commission. *Patterson v. Ark. Dep't of Health,* 343 Ark. 255, 33 S.W.3d 151 (2000). When there are contradictions in the evidence, it is within the Commission's province to reconcile conflicting evidence and to determine the true facts. *Id.* The Commission is not required to believe the testimony of [7the claimant or any other witness, but may accept and translate into findings of fact only those portions of the testimony that it deems worthy of belief. *Id.* The Commission has the authority to accept or reject medical opinions, and its resolution of the medical evidence has the force and effect of a jury verdict. *Poulan Weed Eater v. Marshall,* 79 Ark.App. 129, 84 S.W.3d 878 (2002). Thus, we are foreclosed from determining the credibility and weight to be accorded to each witness's testimony. *Arbaugh v. AG Processing, Inc.,* 360 Ark. 491, 202 S.W.3d 519 (2005). As our law currently stands, the Commission hears workers' compensation claims de novo on the basis before the ALJ pursuant to Arkansas Code Annotated section 11–9–704(c)(2) (Repl.2002), and this court has stated that we defer to the Commission's authority to disregard the testimony of any witness, even a claimant, as not credible. *See Bray*

*v. Int'l Wire Group,* 95 Ark.App. 206, 235 S.W.3d 548 (2006).

Appellants' primary concern appears to be that the Commission awarded appellee additional medical benefits despite the concession that additional medical proof would be necessary to support their decision. By affirming and adopting the ALJ's decision, the Commission also adopted the ALJ's ruling that the medical evidence should be developed more fully before the treatment and procedures requested by appellee can be deemed reasonable and necessary. Appellants contend that doing so constituted a failure to hold appellee to the burden of proof placed upon him by the Arkansas Workers' Compensation statutes. They maintain that the finding that another evaluation needs to occur is a tacit [8admission that the record did not contain evidence sufficient to rule outright that additional treatment, including the implantation of a dorsal-column stimulator was reasonable and necessary. Accordingly, they urge that the decision should be reversed.

We agree. Arkansas Code Annotated section 11–9–704(c)(2) requires ALJs and the Commission to determine, *on the basis of the record as a whole,* whether the party having the burden of proof on the issue has established their case by a preponderance of the evidence. (Emphasis added.) Additionally, section 11–9–705(c)(1)(A) (Supp. 2007) specifies that *all* oral or documentary evidence *shall be presented* to the designated representative of the Commission *at the initial hearing* on a controverted claim. (Emphasis added.) *See also Gencorp Polymer Prods. v. Landers,* 36 Ark.App. 190, 820 S.W.2d 475 (1991).

Additionally, appellants argue that the ALJ, and later the Commission, issued what was, in effect, an advisory opinion in finding that "a stimulator is the preferred course of treatment." The Commission

was not asked to determine the preferred treatment for any one given condition; rather, the Commission was asked to determine whether appellee proved his entitlement to additional medical treatment by a preponderance of the evidence. Appellants assert that appellee has been given the "second bite at the apple" the court warned of in *Landers, supra.* If the physicians' opinions were lacking, or if the Commission felt a more in-depth examination was necessary, the time for that to have occurred should have been prior to the hearing.

The record is replete with records, opinions, and recommendations documenting appellant's condition from Drs. Lytle, Ackerman, Nguyen, and Ahmad from which the ALJ and the Commission were required to make their determinations. We recently stated in *Burkett v. Exxon Tiger Mart, Inc.*, 2009 Ark.App. 93, 304 S.W.3d 2 (2009), that we do not interfere with the actions of the Commission unless we find that it has acted without or in excess of its authority. *See Landers, supra.*

Arkansas Code Annotated section 11–9–811 (Repl.2002) provides:

> Upon its own initiative at any time where compensation payments are being made without an award, the Workers' Compensation Commission may and in any case where the right to compensation has been controverted or where payments of compensation have been suspended, or where an employer seeks to suspend payments made under an award, or on application of an interested party, the commission shall make such investigation, cause such medical examination to be made, hold such hearings, and take such further action as the commission deems proper for the protection of the rights of all parties.

The plain language of section 11–9–811 does not authorize the Commission to reserve making determinations on compensability and additional benefits when those were the only issues litigated by the parties. Based upon the evidence in the record before us, we hold that the record was sufficiently complete to allow a determination that would be fair and just to all parties concerned. In *Landers, supra*, this court expressly stated,

> It is the duty of the Workers' Compensation Commission to translate the evidence on all issues before it into findings of fact. The Commission's statutory obligation is to make specific findings of fact and to decide the issues before it by determining whether the party having the burden of proof on an issue has established it by a preponderance of the evidence.

. . . .

Ark.Code Ann. § 11–9–705(c)(1) provides that all evidence shall be presented to the Commission at the initial hearing on the controverted claim. The burden of proving a case beyond speculation and conjecture is on the claimant.

. . . .

By reserving the issue of whether the appellee was entitled to temporary total disability benefits for the period from February to June 1989, the Commission simply declined to say that the appellee failed to meet her burden of proof on this issue. This constitutes error on the part of the Commission as our workers' compensation statute states that the evidence shall be weighed impartially, and without giving the benefit of the doubt to any party. Ark.Code Ann. § 11–9–704(c)(4). The Commission has allowed the appellee a "second bite at the apple" by giving her another opportunity to present evidence substantial enough to carry her burden.

*Landers,* 36 Ark.App. at 194–95, 820 S.W.2d at 477–78 (internal citations omitted). In this case, it was the statutory obligation of the Commission to make findings of fact and to decide the issue of additional benefits by determining whether appellee met his burden of proof. Pursuant to *Landers,* we hold that the ALJ and Commission erred by ordering an addition-al evaluation and reserving a decision on the primary issue in the litigation.

Reversed and remanded.

PITTMAN and HENRY, JJ., agree.